UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------X

THOMAS K. CAMPBELL, et al.,

                Plaintiffs,

    -versus-                        No. 05-CA-11951-JLT

ENTERGY NUCLEAR OPERATIONS, INC.,

                Defendant.

-----------------------------------------------------------X


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ENTERGY'S
MOTION FOR SUMMARY JUDGMENT DISMISSING CLAIMS OF
"COMPUTER EMPLOYEE" PLAINTIFFS**

James Reif (pro hac vice)
Beth N. Margolis (pro hac vice)
Anjana Malhotra (pro hac vice)
GLADSTEIN, REIF & MEGINNISS, LLP
817 Broadway, 6th Floor
New York, New York 10003
(212) 228-7727

Scott J. Tucker (BBO#503940)
TUCKER, HEIFETZ & SALTZMAN, LLP
100 Franklin Street, Suite 801
Boston, Massachusetts 02110
(617) 557-9696

Attorneys for Plaintiffs

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 1

SUMMARY OF PRINCIPLES ........................................................................................... 1

    A.  The Burden of Proof on an Exemption Defense ...................................................... 1

    B.  Summary Judgment ................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

    I.  Plaintiffs' Duties Do Not Bring Them within the Terms of the Computer
        Employee Exemption Before or After the Regulations Were Amended in
        August 2004. ........................................................................................................... 3

          A.  Plaintiffs Do Not Perform, as their Primary Duty, the Activities Set
              Forth in the New Computer Employee Regulations, Regardless of .......... 5
              Whether those Activities are Viewed in Combination or Individually

          B.  Plaintiffs' Work Has Never Required the Consistent Exercise of Discretion
              and Independent Judgment ........................................................................ 9

    II.  That Part Of Entergy's Motion Seeking Partial Summary Judgment Against
         Plaintiffs on the Ground that They Were "Highly Compensated Employees"
         in Certain Years Must Be Denied ........................................................................ 12

    III.  Plaintiffs Are Not Compensated on a Salary Basis and Therefore
         Cannot Be Considered Professionals under Section 213(a)(1) ............................. 18

CONCLUSION ................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page**

## CASES:

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).................................................................2

Ale v. T.V.A., 269 F.3d 680 (6th Cir. 2001) ........................................................................5

Anderson v. Liberty Lobby, Inc, 477 U.S. 242 (1986)...........................................................3

Arnold v. Ben Kanowsky, Inc., 361 U.S. 388 (1960)....................................................2, 14, 18

Barth v. Wolf Creek Nucl. Op. Corp., 125 F.Supp.2d 437 (D. Kan. 2000)............................5

Bergquist v. Fidelity Information Services, Inc., 339 F. Supp.2d 1320 (M.D. Fla. 2005).......12

Brock v. Nat'l Health Corp., 667 F.Supp. 557 (M. D. Tenn. 1987) ........................................5

Continental Cas. v. Canadian Universal Ins., 924 F. 2d 370 (1st Cir. 1991) ...........................3

Corning Glass Works v. Brennan, 417 U.S. 188 (1974).........................................................1

Jackson v. McKesson Health Solutions, LLC, 2004 WL 2453000 (D. Mass.2004) ...............6, 12

Jewell Ridge Coal Corp. v. Mine Workers, 325 U.S. 161 (1945) ...........................................17

Kohl v. Woodlands Fire Dept., 440 F.Supp.2d 626 (S. D. Tex. 2006)....................................5

Mack v. Cape Elizabeth School Bd., 553 F.2d 720 (1st Cir. 1977) ........................................2

Martin v. Indiana Michigan Power Co., 381 F. 3d 574 (6th Cir. 2004) ..................................6

Nat'l Amusements, Inc. v. Town of Dedham, 43 F. 3d 731 (1st Cir.) ......................................2

Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997)..................................................14

Reich v. Newspapers of New England, Inc., 44 F. 3d 1060 (1st Cir. 1995) ...........................2, 18

Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46 (1st Cir. 2000) ...................3

**Page**

Schaefer v. Indiana Michigan Power Co., 358 F.3d 394 (6th Cir. 2004) .................................2, 5, 9, 12

Secretary of Labor v. DeSisto, 929 F. 2d 789, 797 (1st Cir. 1991) .........................................1, 2

Smith v. F.W. Morse & Co., 76 F. 3d 413, 427 (1st Cir. 1996) ....................................................3

Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999).............................3

Turner v. Human Genome Sciences, 292 F.Supp 2d 738 (D. Md. 2003)................................11

U.S. v. Newman, 982 F.2d 665, 672 (1st Cir. 1992) ................................................................14

U.S. v. Reccko, 151 E3d 29, 34 (1st Cir. 1998) .....................................................................14

U.S. v. Rocha, 916 F.2d 219, 243 (5th Cir. 1990) ....................................................................14

Walling v. Gen. Indus. Co., 330 U.S. 545, 547-48 (1947) .......................................................1

Young v. Cerner, 2007 WL 2463205, p. 2 (W.D. Mo. 2007)................................................7

**STATUTES:**

Fair Labor Standards Act of 1937:

    Section 7 ...................................................................................................1, 3, 18

    Section 13 ..................................................................................................1, 16

    Section 213 ................................................................................................3, 4, 16

**RULES & REGULATIONS:**

Code of Federal Regulations:

    29 C.F.R. § 541.118 .................................................................................19, 20

    29 C.F.R. § 541.200(a).............................................................................16, 17

**Page**

9 C.F.R. § 541.201(b) ...................................................................................9

29 C.F.R. § 541.201(c) .................................................................................9

29 C.F.R. § 541.202(a) .................................................................................9

29 C.F.R. § 541.202(e) .................................................................................9

29 C.F.R. § 541.207(a) .................................................................................9

29 C.F.R. § 541.214(a) ...............................................................................16

29 C.F.R. § 541.3 .........................................................................................4

29 C.F.R. § 541.303 .....................................................................................4

29 C.F.R. § 541.400(b) .........................................................................4, 5, 6

29 C.F.R. § 541.601(a) .......................................................................12, 13, 15

29 C.F.R. § 541.601(b) ...............................................................................13

29 C.F.R. § 541.602 ...............................................................................19, 20

29 C.F.R. § 541.700(c)...................................................................................

29 C.F.R. § 541.701 .....................................................................................15

Federal Rules of Civil Procedure:

Rule 56(c) ....................................................................................................2

Rule 56(e) ....................................................................................................3

## PRELIMINARY STATEMENT

Entergy Nuclear Operations, Inc. ("ENOI") has moved for summary judgment dismissing the Complaint, asserting primarily that plaintiffs are not entitled to the protection of the overtime compensation guarantees of the Fair Labor Standards Act ("FLSA") and Massachusetts law.  Defendant has divided the fifty plaintiffs into four groups and submitted a separate motion for each group.  For the Court's convenience and putting aside the appropriateness of these groupings, plaintiffs divide their opposition into corresponding parts. The instant memorandum is submitted by plaintiffs labeled "computer employees" in opposition to the motion seeking dismissal of the claims of said plaintiffs.

## STATEMENT OF FACTS

The facts are set forth in Plaintiffs' Statement Of Material Facts In Dispute Regarding Computer Employee Plaintiffs ("PSMF") and in the Declaration cited therein.

## SUMMARY OF PRINCIPLES

### A.  The Burden of Proof on an Exemption Defense

A contention that an employee is not entitled to the protection of FLSA Sec. 7(a)(1) because he is allegedly a professional, computer or other exempt employee under FLSA Sec. 13(a) is in the nature of an affirmative defense.  Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).  Thus, an employer that makes this contention has the burden of proof on such a defense.  Id.; Secretary of Labor v. DeSisto, 929 F. 2d 789, 797 (1st Cir. 1991).  This burden exists with respect to every element of the claimed exemption.  Walling v. Gen. Indus. Co., 330 U.S. 545, 547-48 (1947).  As the FLSA is a remedial statute, the administrative exemption must be narrowly construed against the employer asserting it.  Such an exemption is

1

limited to those circumstances "plainly and unmistakably" within both the "terms" and the "spirit" of the exemption.  Reich v. Newspapers of New England, Inc., 44 F. 3d 1060, 1070 (1st Cir. 1995), quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960); DeSisto, supra.

## B.  Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper only if the record shows no genuine issue of material fact and the movant demonstrates an entitlement to judgment as a matter of law.  The burden of establishing the nonexistence of a genuine issue is on the party moving for summary judgment.  Mack v. Cape Elizabeth School Bd., 553 F. 2d 720, 722 (1st Cir. 1977).  This burden has two distinct components.  The initial burden of production requires the moving party to make a prima facie showing that it is entitled to summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970); Nat'l Amusements, Inc. v. Town of Dedham, 43 F. 3d 731, 735 (1st Cir.), cert den., 515 U.S. 1103 (1995).  Where, as here, the defendant will have the burden of persuasion at trial as to each plaintiff on each element of the defense which is the predicate for its motion, see supra, the defendant can satisfy its preliminary burden only by supporting its Rule 56 application with credible evidence which, if not controverted at trial, would entitle it to a directed verdict, in other words, with sufficient credible evidence supporting the movant on each element of the defense as to each plaintiff.  Schaefer v. Indiana Michigan Power Co., 358 F.3d 394, 400 (6th Cir. 2004).

If the movant satisfies its initial burden, the opposing party must then produce affidavits and/or other evidentiary materials demonstrating the existence of a genuine issue as to one or more materials facts.  See Fed. R. Civ. P. 56(e).  A fact is material within the meaning of Rule 56 if it has the "potential to affect the outcome of the suit under the applicable law."

<u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1ˢᵗ Cir. 2000).  A genuine

issue is one supported by such evidence that "a 'reasonable jury, drawing favorable inferences'

could resolve it in favor of the non-moving party."  <u>Triangle Trading Co. v. Robroy Indus., Inc.</u>,

200 F.3d 1, 2 (1ˢᵗ Cir. 1999) (quoting <u>Smith v. F.W. Morse & Co.</u>, 76 F. 3d 413, 427 (1ˢᵗ Cir.

1996)). The ultimate burden of persuasion rests with the movant.  The function of the court on a

Rule 56 motion is not to resolve a genuine dispute as to a material fact but only to ascertain

whether such a dispute exists.  <u>Continental Cas. v. Canadian Universal Ins.</u>, 924 F. 2d 370, 373

(1ˢᵗ Cir. 1991), citing <u>Anderson v. Liberty Lobby, Inc,</u> 477 U.S. 242, 249 (1986).  In making this

determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in his favor."  <u>Id.</u>, at 255; <u>accord:</u> <u>Continental Cas.</u>, 924 F. 2d at 373.  Any doubt

as to the existence of a genuine issue for trial is to be resolved against the movant.  <u>See</u>, <u>e.g.</u>,

<u>Adickes</u>, 398 U.S. at 158-59.

## **ARGUMENT**

### I.  **Plaintiffs' Duties Do Not Bring Them within the Terms of the Computer Employee Exemption Before or After the Regulations Were Amended in August 2004.**

Entergy contends that plaintiffs were/are not entitled to the protections of FLSA

Sec. 7(a)(1) because they each fall under the exemption for computer employees set forth in

FLSA Sec. 213(a)(1) and (17).  To qualify for the computer exemption under this section,

Entergy must prove that each plaintiff's primary duty was/is: (A) the application of systems

analysis techniques and procedures, including consulting with users, to determine hardware,

software, or system functional specifications; (B) the design, development, documentation,

analysis, creation, testing or modification of computer systems or programs, including

3

prototypes, based on and related to user or system design specifications; (C) the design,

development, documentation, testing, creation or modification of computer programs related to

machine operating systems; or (D) a combination of duties described in subparagraphs (A), (B),

and (C) the performance of which requires the same level of skills. . . .  29 U.S.C. § 213(a)(17).

Until August 22, 2004, regulations promulgated by the DOL and found at 29

C.F.R. § 541.3 and § 541.303 further defined computer employees covered by this exemption:

> The terms employee employed in a bona fide . . . professional
> capacity . . . shall mean any employee: (a) whose primary duty consists of
> the performance of…(4) work that requires theoretical and practical
> application of highly specialized knowledge in computer systems analysis,
> programming, and software engineering and who is employed and
> engaged in these activities as a computer systems analyst, computer
> programmer, software engineer, or other similarly skilled worker in the
> computer software field, as provided in § 541.303; and (b) whose work
> requires the consistent exercise of discretion and judgment in
> performance.

The primary job duties described in the above regulation track those set forth in the

aforementioned statute. Effective August 23, 2004, the Department of Labor ("DOL") revised

the regulations regarding computer employees.  The current regulation, 29 C.F.R. § 541.400(b)

(2004), also identifies primary duties required for computer employees to be exempt.  Those

duties are identical to the primary duties set forth above in the statute and the old regulations.

The principal distinction is that the new regulations eliminated the requirement that exempt

computer employees exercise discretion and independent judgment in the performance of their

job duties.  For the reasons set forth below, plaintiffs do not fall within the current or prior

regulations and thus summary judgment should not be granted with respect to any relevant

period of employment.

### A.  Plaintiffs Do Not Perform, as their Primary Duty, the

**Activities Set Forth in the New Computer Employee
Regulations, Regardless of Whether those Activities are
Viewed in Combination or Individually.**

As set forth above, in order to be exempt from the requirements of the FLSA as
computer employees, Ko and AuDong's primary duty must be the performance of the activities
listed in § 541.400(b)(1) through (3), or some combination of those duties. (29 C.F.R. §
541.400(b)(4). Plaintiffs submit that the deposition testimony of Ko and AuDong make clear
that they either do not perform any of those activities, or to the extent they do perform such
activities on occasion, those activities certainly do not constitute plaintiffs' primary duty.

First, it is well-settled that the job title of an employee is not determinative of
whether said employee is covered by an exemption. Thus, the fact that Ko and AuDong may
have job titles that are similar to the titles of employees who have been found to be exempt,
should be given no weight. E.g., Schaefer, 358 F.3d at 400.

Similarly, the mere fact that these plaintiffs work with computers does not, in and
of itself require that they be treated as exempt. As this District Court aptly noted:

> The statute does not require that all computer professionals be
> exempted. Finding that it does would be "an understandable
> mistake, one that arises from the common perception that all jobs
> involving computers are necessarily highly complex and require
> exceptional expertise." Martin v. Indiana Michigan Power Co.,
> 381 F. 3d 574, 580 (6th Cir. 2004).

Jackson v. McKesson Health Solutions, LLC, 2004 WL 2453000, p. 4 (D. Mass. 2004). Thus,
especially where such a misconception exists, the Court should be wary of the sort of conclusory
assertions made by defendant here, that these plaintiffs are routinely engaged in complex
computer programming, analysis and testing. In fact, when the actual job duties of these
plaintiffs are examined it is clear that this is not the case.

5

Both Ko and AuDong work exclusively on the simulator.  PSMF ¶ 9.  They have nothing whatsoever to do with any of the computer systems used to operate the nuclear plant itself.  PSMF ¶ 23.  As such there is no conceivable basis for asserting that these plaintiffs perform the activities described in subsection (3) of the regulations, because they do not work on "computer programs related to machine operating systems."  29 C.F.R. § 541.400(b)(3).

The simulator is used to train the operators how to operate the plant, much like a flight simulator is used to teach pilots how to fly.  PSMF ¶ 11.  Ko likened the simulator to a "video game."  PSMF ¶ 10.  Ko and AuDong are responsible for ensuring that the simulator is up and running, which requires nothing more than ensuring that the computer is turned on.  PSMF ¶ 21.  Ko and AuDong are also responsible for testing the simulator to be sure it is performing its intended function.  The particular tests that must be performed on the simulator are all required by Nuclear Regulatory Commission ("NRC") guidelines.  The tests are performed using ANSI standards and written procedures.  Neither of the plaintiffs play any role in drafting these procedures.  PSMF ¶¶ 17 and 18.

This testing, which does not involve determining whether software has been properly drafted, clearly is not the sort of testing referred to in the regulations.  In <u>Martin</u>, <u>supra</u>, the Sixth Circuit found that testing of this nature did not fall within the activities described by the regulation and thus it reversed the district court's grant of summary judgment in favor of the employer and entered summary judgment for the employee.  The testing performed by the plaintiff in <u>Martin</u> involved "figuring out what is wrong with a workstation, printer or piece of cable" so that it could be restored to working order.  The Court held that this testing was not covered by the exemption because it was not involved in "creating a system, determining the

6

desired settings for a system, or otherwise substantively affecting the system." Instead, in that case, as here, the employee was merely "maintaining the computer system within the predetermined parameters." Id. at 581. Cf. Young v. Cerner, 2007 WL 2463205, p. 2 (W.D. Mo. 2007) (Plaintiff found to be exempt under computer employee exemption because, inter alia, "she performed two types of tests…to verify that her analysis, design and modification of the defect solution met user and system design specifications.").

In addition to performing the mandated testing to ensure that the simulator is operating properly, these plaintiffs also deal with day-to-day problems that arise with the simulator. When anyone at the plant notices a problem in the way the simulator is operating, a deficiency report is generated. The plaintiffs' supervisor reviews all such reports, categorizes them based on how quickly the problem needs to be fixed and assigns the deficiencies to one of the plaintiffs. PSMF ¶ 12. The problems that are reported in deficiency reports include things like typographical errors and incorrect set points which triggers a response before the appropriate value is obtained. PSMF ¶ 13. Often the deficiency report itself, tells the plaintiff what procedure to use to fix the problem. There are also procedures and guidelines that the plaintiffs must follow when they update the simulator software. PSMF ¶ 14. Thus, the duties of these plaintiffs do not include the activities enumerated in the new regulations.

Instead, the plaintiffs' duties are much more similar to those described in the October 26, 2006 Opinion Letter issued by DOL, FLSA2006-42.[1] In that letter the DOL opined that employees who spent fifty-five percent of their time analyzing, trouble shooting and

---

1      Attached as Exhibit D to Declaration of Beth M. Margolis in Opposition to Defendant's Motion for Summary Judgment Regarding Computer Employees.   ("Margolis Decl.")

7

resolving complex problems with business applications, networking and hardware; twenty

percent of their time installing, configuring and testing upgraded and new business computers

and applications; ten percent of their time participating in the design, testing and deployment of

client configurations throughout the organization; and five percent of their time on each of the

following tasks –  participating in the analysis and selection of new technology, documenting

technical processes and troubleshooting guidelines and monitoring automated alerts – did not fall

within the computer employee exemption.   The DOL found that the primary duties of these

employees consisted of "installing, configuring, testing, and troubleshooting computer

applications, networks and hardware."  As such the DOL concluded that these tasks did not fall

within any of the activities required to be found exempt under these regulations.

Finally, even if the Court determines that there is not a material dispute of fact

with respect to the nature of plaintiffs duties here and that plaintiffs are occasionally called upon

to write programs for the simulator, defendant has failed to submit *any* evidence that this task

occupies any appreciable amount of the plaintiffs' time, much less that it constitutes their

primary duty.  Accordingly, there is no basis on the instant record upon which the Court could

find that there is no material dispute of fact which would warrant granting defendant's summary

judgment motion regarding these plaintiffs.

### B.  Plaintiffs' Work Has Never Required the Consistent Exercise of Discretion and Independent Judgment

In general, the exercise of discretion and independent judgment must "involve[ ]

the comparison and the evaluation of possible courses of conduct, and acting or making a

decision after the various possibilities have been considered."  (29 C.F.R. § 541.202(a)).  See 29

C.F.R. § 541.207 (a) (former).  "[T]he use of skill in applying well-established techniques,

8

procedures or specific standards described in manuals or other sources" does <u>not</u> constitute an

exercise of discretion and independent judgment. (§ 541.202(e)). Therefore care must be taken

not to confuse the former for the latter. <u>See</u> 29 C.F.R. § 541.201(b)-(c)(distinguishing use of

skill in applying techniques, procedures or specific standards from exercise of discretion and

independent judgment and providing examples to highlight distinction). <u>See also</u> <u>Schaefer,</u> 358

F.3d at 404-5 (making this distinction in denying summary judgment to power plant operator on

environmental specialist's FLSA claim).

   Here, defendant asserts that plaintiffs have consistently exercised discretion and

independent judgment in performing their job duties. Defendant argues that when working with

the simulator, the computer employee plaintiffs, rather than relying on a procedure or guidelines,

rely exclusively on their education and brain power. In making this argument, defendant ignores

the record evidence showing that plaintiffs do not exercise discretion and independent judgment

on the job.

  As noted above, much of what the plaintiffs do is required by specific procedures and is

mandated by their supervisor. (PSMF ¶ 12, 14, 16-20). They play no role in prioritizing their

work or writing the procedures that govern their work. (PSMF ¶ 12, 18-19). They cannot even

correct a mistake in a procedure should they find one. Indeed, they are not even permitted to

make <u>any</u> changes to software without the direct approval of their supervisor. For example,

when asked whether there were any situations where he could just fix a software problem on his

own, AuDong testified: "We have a procedure. We have a step to do. And so I have to follow

that procedure… even though it's just [that] you change a comma to a period." (PSMF ¶ 15).

Moreover, when there are several options regarding how to deal with a deficiency report, the

9

Computer Specialists present the options to their supervisor. The determination of how to proceed is up to the supervisor. (PSMF ¶ 16).

Similarly, as stated above, the tests that plaintiffs perform on the simulator are executed pursuant to official guidelines. The plaintiffs have no input into the testing schedule. Nor do they ever suggest that additional testing be performed. (PSMF ¶ 17-19). In light of the aforementioned evidence, it is clear that plaintiffs do not exercise discretion and independent judgment.

Even if the Court were to find that there is some evidence that plaintiffs carry out duties requiring the exercise of discretion and independent judgment, the evidence to the contrary precludes the granting of the employer's summary judgment motion. For example, the facts in the instant case are comparable to those in Barth, supra, which also involved a FLSA overtime claim. In that case, the Court denied the employer's summary judgment motion, holding that the record presented a dispute as to whether plaintiffs, engineering specialists and engineers in a nuclear power plant, consistently exercised discretion and judgment in the performance of their duties. Id. at 441-442. The Court noted that the record contained multiple examples of instances in which particular plaintiffs exercised varying degrees of discretion or independent judgment in performing certain tasks, including prioritizing work, doing root cause analyses, and writing various procedures. Like in the instant case, however, the record also contained testimony from the plaintiffs indicating that their duties were carried out in strict accordance with standardized procedures from which they rarely deviated. Similarly, as in the instant case, the Barth plaintiffs were closely supervised and given little latitude to fashion solutions to systems problems. Id. at 442-443.

10

The instant case is also similar to <u>Turner v. Human Genome Sciences</u>, 292 F.Supp 2d 738 (D. Md. 2003). In that case, the defendant, in support of its summary judgment motion seeking dismissal of the plaintiffs' FLSA overtime claim, asserted that the plaintiffs, systems support technicians, diagnosed problems, considered alternative solutions, and determined and implemented the solutions they believed to be the best. <u>Id.</u> at 747. The Court, however, noted record evidence that, as in the instant case, indicated that while the plaintiffs certainly utilized their own knowledge and skill to solve computer problems, their primary duties did not involve the required discretion or independent judgment. In resolving software and network problems, the plaintiffs followed a systematic approach, were required to follow standards set by each department, and did not have latitude to work on matters of consequence without supervisory approval. <u>Id</u>. <u>See also</u> <u>Schaefer</u>, 358 F.3d at 404 (that the nuclear power industry is heavily regulated may mean that the employer employs fewer individuals who actually exercise discretion); <u>Jackson</u>, <u>supra</u>.

In contrast, the case at hand is distinguishable from <u>Bergquist v. Fidelity Information Services, Inc.</u>, 339 F. Supp.2d 1320 (M.D. Fla. 2005), where the plaintiff was found to be an exempt computer employee. In that case, plaintiff developed computer programs and was generally not supervised. The <u>Bergquist</u> Court found that the plaintiff's work required the consistent exercise of discretion and judgment. <u>Id</u>. at 1331-2. Here, in contrast, both AuDuong and Ko are supervised closely and cannot make the simplest software modification without their supervisor's approval. Accordingly, as there is no basis for concluding that plaintiffs exercise discretion and independent judgment, defendant's summary judgment motion must be denied.

## II. That Part Of Entergy's Motion Seeking Partial Summary Judgment Against Plaintiffs on the Ground that They Were

11

**"Highly Compensated Employees" in Certain Years Must Be Denied.**

Entergy argues in the alternative that AuDuong and Ko (and twenty other plaintiffs) were exempt from the protections of the FLSA as so-called highly compensated employees within the meaning of § 541.601, although only for certain individual calendar years. See Declaration of Donald Larsen ("Larsen Decl."), Ex. 1, attached as Ex. C to Margolis Decl. This argument for partial summary judgment against the plaintiffs in question is unavailing.

Only an employee whose "total annual compensation" is at least $100,000 may qualify as a highly compensated employee. See § 541.601(a). 2 In the instances Entergy cites as to AuDuong and Ko (and in the vast majority of the 36 other instances cited by defendant), Entergy purports to reach the $100,000 threshold only by adding on to a plaintiff's "annual base pay" an "incentive payment." It says that AuDuong was compensated in 2006 in the amount of $102,571.09, but only after it adds an "incentive payment" of allegedly $12, 595.33 to plaintiff's 2006 "annual base pay" of $89,975.76. Similarly, Entergy says Ko was compensated in 2006 in the amount of $104,110.48, but only because it tacks on an "incentive payment" of allegedly $12,784.48 to Ko's 2006 "annual base pay" of $91,326.00. Entergy's chart is replete with similar instances of piggybacking an "incentive payment" on top of "annual base pay" with respect to the other plaintiffs in order to cross the $100,000 threshold. It is clear, however, that the relevant regulation proscribes inclusion of such an "incentive payment" in a plaintiff's annual compensation for purposes of determining the potential applicability of the highly compensated employee exemption.

---

2       In theory, there could be as many as 200 instances where the total annual compensation of a plaintiff here might satisfy the $100,000 threshold in § 541.601 (50 plaintiffs x 4 calendar years, i.e., 2004-2007). By its chart, Entergy claims only 38 instances of a plaintiff meeting the $100,000 threshold.

12

The term "total annual compensation" includes only <u>non-discretionary</u> compensation.  Sec. 541.601(b) explicitly provides:

> "Total annual compensation" must include at least $455 per week paid on a salary or fee basis.  <u>Total annual compensation may also include commissions, non-discretionary bonuses and other non-discretionary compensation earned during a 52-week period.</u>

(Emphasis added).  The regulation says nothing about including discretionary compensation in the highly-compensated employee exception.  The express statement that "non-discretionary bonuses" and other types of "non-discretionary compensation" may be included in determining the applicability of this exception shows that discretionary bonuses and other types of discretionary compensation were <u>not</u> to be included.  Application of the established canon, "Expressio unius est exclusio alterius," precludes expansion of that exception beyond its terms. <u>U.S. v. Reccko</u>, 151 E3d 29, 34 (1st Cir. 1998).  "[T]he enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded."  <u>U.S. v. Newman</u>, 982 F.2d 665, 672 (1st Cir. 1992), quoting <u>U.S. v. Rocha</u>, 916 F.2d 219, 243 (5th Cir. 1990).  This canon is of especial force where, as here, the circumstance not included in the exception is the converse of that which is.  This conclusion is buttressed by the established principle that any Sec. 13(a)(1) exemption must be narrowly, not broadly, construed and is to be limited to those circumstances "plainly and unmistakably" within both the "letter" and the "spirit" of the exemption.  <u>Reich v. Newspapers of New England, Inc.</u>, 44 F.3d 1060, 1070 (1st Cir. 1995), quoting <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960).

Each "incentive payment" on which Entergy relies in order to cross the $100,000 threshold was <u>discretionary</u> compensation.  Entergy was under no obligation to make any such payments or to make them pursuant to a particular standard or to make them in a prescribed

13

amount. (Docket Number 206, Declaration of David Leonardi in Opposition to Motion for

Summary Judgment regarding "Instructor" Employees ("D. Leonardi Decl."), para. 35).  It

follows that such payments may not be included when determining "total annual compensation"

for purposes of § 541.601.[3]  Accordingly, neither AuDuong nor Ko can be subjected to §

541.601 and there remain in Entergy's chart only 12 purported instances among nine plaintiffs of

total annual compensation of at least $100,000.[4]

According to § 541.601(a), a plaintiff satisfying the $100,000 threshold could be

deemed exempt as a highly compensated employee if (s)he "customarily and regularly performs

any one or more of the exempt duties or responsibilities of an executive, administrative or

professional employee identified in subparts B, C or D of [Part 541]."  As explained below, such

a purported exemption is arbitrary and capricious and therefore void and unenforceable.

The plain language of §541.601(a) empowers an employer to treat an employee as

an administrative employee exempt from the FLSA even when (s)he performs virtually no

administrative work and even if what miniscule administrative work (s)he performs includes no

exercise of discretion and independent judgment.  "Customarily and regularly" is a matter of

recurrence only.  See 29 C.F.R. § 541.701.  It does not refer to the fraction or percentage of time

the performance of the duty consumes nor to the relative importance of that work.  Thus, if an

---

3       Parenthetically, Entergy's chart also improperly treats as compensation in each given calendar year
"incentive payments" which were not made in that year.  As Entergy effectively acknowledges by the asterisk on its
chart, each "incentive payment" it attributes to one calendar year was actually received in or about March of the
succeeding calendar year.  For example, each of the payments listed under the heading "2005 INCENTIVE
PAYMENT" was actually received in 2006, not 2005.  See also, e.g., D. Leonardi Decl., para. 36; Docket Number
205, Declaration of Jim Reif in Opposition to Motion for Summary Judgment Regarding "Instructor" Employees
("Reif Decl."), Ex. B).
4       These are Ginnetty, Hickey, Kennedy, David Leonardi, Muse and Smalley (each in 2007 only); Hunnefeld
(in 2006 only); Moraites (in 2006 and 2007); and Piascik (in 2005, 2006 and 2007).  However, the pay attributed to
Hunnefeld in 2006 in Larsen's Ex. 1 is incorrect.  He was actually paid approximately $70,000 in that year.  See Reif
Decl., para. 6 and Ex. E.

employee customarily and regularly performs a solitary unimportant administrative duty the performance of which occupies only 1% of the employee's time, the criterion pertaining to duties set forth in § 541.601(a) would be satisfied, <u>even if the employee performs no administrative work the other 99% of the time</u> and even if the employee exercises <u>no</u> discretion and independent judgment.

FLSA regulations promulgated by the Secretary are entitled to a measure of deference, but the legislative delegation of authority to the Secretary is not a blank check.  <u>See</u> <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 8 (1st Cir. 1997) (legislative regulations not entitled to controlling weight where "arbitrary, capricious, or contrary to the statute").  FLSA Sec. 13(a)(1), 29 U.S.C. § 213(a)(1), is not an authorization to treat as an exempt administrative employee an employee whose primary duty is not principally the performance of administrative work, indeed, to treat as an exempt employee one who performs virtually no administrative work, <u>compare</u> § 541.200(a)(2), particularly where the droplet of administrative work § 541.601 purports to require need not include the exercise of discretion and independent judgment. <u>Compare</u> §541.200(a)(3).  It should be noted that there was no comparable regulation in effect prior to August 23, 2004.  Indeed, it is useful to compare the former regulation pertaining to so-called "high salaried administrative employees."  Sec. 541.214(a)(former) provided in relevant part that an employee crossing the salary threshold there was an exempt "high salaried administrative employee" <u>only if his/her primary duty consisted of administrative work which</u> <u>included the exercise of discretion and independent judgment.</u>  In contrast, the current regulation would essentially unhinge the so-called highly compensated employee from the performance of administrative work and from the exercise of discretion and independent judgment in the

15

performance of such work.

It cannot be plausibly suggested that receipt by an Entergy employee here of total annual compensation of at least $100,000 by itself is somehow a valid proxy for the performance of work consisting primarily of administrative work and including the exercise of discretion and independent judgment as to matters of significance.  Many employees in many different fields receive compensation of more than $100,000 in a given year, yet no one would seriously contend they are administrative employees, or executive or professional employees for that matter.  And it must be assumed that Entergy is unable show that the plaintiffs whom it would treat as highly compensated employees in a particular year should be deemed exempt under § 541.200(a):  if Entergy were able to satisfy its burden under § 541.200(a), there would be no need on defendant's part to resort to § 541.601.  Thus, for purposes of Entergy's highly-compensated employee contention, it properly should be assumed that the primary duty of any putative highly compensated employee does not consist of administrative work and include the exercise of discretion and independent judgment.

Entergy does not contend that the work performed by any plaintiff whom it would deem a highly compensated employee in one year was different from the work performed by him/her in a prior calendar year when the plaintiff's compensation did not satisfy the $100,000 threshold.  As a consequence, plaintiff Peter Moraites, for example, whose total annual compensation in 2005 was $99,005.76, assumedly would not be deemed exempt in that year under § 541.200(a) because his primary duty did not consist of administrative work and include the exercise of discretion and independent judgment.  Yet, according to Entergy, in 2006, when his total annual compensation increased to $101,976.00 as a result of a 3% increase, he was

16

suddenly exempt under §541.601, even though his duties in 2006 were exactly the same as in 2005 and thus were such as would not qualify for the administrative exemption under § 541.200(a).  See Larsen Decl., Ex. 1.  Under § 541.601, this 2006 result would obtain even if Moraites performed virtually no administrative work.  That the highly compensated employee definition in § 541.601 is arbitrary and capricious is highlighted further when one considers that the 3% increase from 2005 to 2006 in Moraites' total annual compensation barely exceeded the increase in the applicable cost-of-living index for the same period.

In Jewell Ridge Coal Corp. v. Mine Workers, 325 U.S. 161, 167 (1945), the Supreme Court stated:  "[E]mployees are not to be deprived of the benefits of the [FLSA overtime compensation guarantee] simply because they are well paid…"  Section 541.601's inconsequential nod to administrative work cannot obscure that this regulation is inconsistent with Jewell Ridge Coal's understanding of Sec. 13(a)(1).  That §541.601 is arbitrary and capricious is reinforced by the canon noted above, that the administrative exemption created by FLSA Sec. 13(a)(1) must be narrowly, not broadly, construed and is limited to those circumstances "plainly and unmistakably" within both the "terms" and the "spirit" of the exemption.  Newspapers of New England, Inc., 44 F.3d at 1070, quoting Ben Kanowsky, Inc., 361 U.S. at 392.5  Hence, a plaintiff is not deprived of the protection of FLSA Sec. 7, 29 U.S.C. § 207, even in the infrequent instances where Entergy may show he received total annual compensation of $100,000.

_____

5       Massachusetts law does not recognize a highly-compensated employee exception to the overtime compensation guarantee in M.G.L. chap. 151, sec. 1A.  Thus, the highly-compensated employee defense Entergy advances under the FLSA is inapplicable to plaintiffs' claims under Massachusetts law.

17

### III. Plaintiffs Are Not Compensated on a Salary Basis and Therefore Cannot Be Considered Professionals under Section 213(a)(1)

As set forth in Point I. B above, because the Computer Specialists do not exercise discretion and independent judgment in the performance of their duties, they also do not qualify for FLSA's professional exemption. They likewise do not qualify for this exemption because they are not compensated on a salary basis.

Whether Entergy compensates plaintiffs on a salary basis within the meaning of § 541.602 and/or § 541.118 (former) is a question of law, not, as Entergy seems to believe, a question of fact. Each plaintiff was required by Entergy to appear in Boston for a deposition. A large majority were still employed by Entergy and were deposed on days when they were scheduled to work. Each deposition lasted 3-4 hours and required a roundtrip of approximately two hours. After causing these plaintiffs to miss at least a half day of work, Entergy deducted from the plaintiff's paid vacation time the number of hours of work it had caused that plaintiff to miss. (Docket Number 204, Plaintiffs' Statement of Material Facts regarding "Instructor" Employees at ¶ 29-30).[6]

Under the applicable bargaining agreement, a technical employee leaving employment with unused paid vacation time is entitled to be paid for that time. Plaintiff Cormier[7] left employment with Entergy with unused paid vacation time, after having been

---

[6]    If a plaintiff took the full amount of paid vacation to which (s)he was entitled under the collective bargaining agreement, without regard to the work missed as a consequence of the deposition required by Entergy, the plaintiff was subject to a loss of pay and/or discipline. See Docket Number 208, Declaration of Paul Cormier in Opposition to Motion for Summary Judgment Regarding "Instructor" Employees at ¶ 2.

[7]    The terms and conditions of all of the plaintiffs, including Ko and AuDong, are governed by the Collective Bargaining Agreement. Thus they are and will be treated in the same fashion as Cormier. Plaintiffs use Cormier here by way of example because he has actually left the employ of Entergy and thus has suffered a reduction in his compensation.

18

deposed. Cormier had been specifically told by his Supervisor that if he did not take a vacation

day for the day he missed work due to his deposition, he would not be paid for that day. When

Cormier left employment with Entergy, he was paid for his unused paid vacation time, except

that Entergy deducted from that payment an amount equal to the number of scheduled hours of

work Cormier missed on his deposition day times his rate of pay on an hourly basis. (Docket

Number 204, Plaintiffs' Statement of Material Facts regarding "Instructor" Employees at ¶ 31).

Whether an employee is compensated on a salary basis depends on how the

employer treats an employee absence. The pertinent regulations, § 541.602 and § 541.118

(former), draw a distinction between an absence occasioned by the employee and one caused by

the employer. In the case of the former, the employer is deemed to compensate on a salary basis

so long as it still pays "a predetermined amount constituting all or part of the employee's

compensation, which amount is not subject to reduction because of variations in the quality or

quantity of the work performed." In contrast, "[a]n employee is not paid on a salary basis if

deductions from the employee's predetermined compensation are made for absences occasioned

by the employer…" Thus, where an absence is caused by the employer, whether the employer

still pays to the employee a predetermined "amount" which constitutes "all or part" of the

employee's compensation or whether the predetermined "amount" is subject to a "reduction"

based on quality or quantity of work is irrelevant. Where, as here, the employer makes any

"deduction" from the employee's predetermined "compensation," the employee is not

compensated on a salary basis. Under plaintiffs' collective bargaining agreement, paid vacation

time is a form of compensation. This is highlighted by Entergy's contractual obligation to pay

departing plaintiffs for unused paid vacation time. Where, as here, an employer deducts

predetermined paid vacation time from employees' compensation because of absences caused by the employer, it does not compensate employees on a salary basis.  Where, as with plaintiff Cormier, Entergy both deducts paid vacation time and predetermined compensation for unused vacation time because of such absences, a fortiori it does not compensate on a salary basis.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment dismissing the claims of computer employee plaintiffs should be denied.


Dated: April 9, 2008


Respectfully submitted,


GLADSTEIN, REIF & MEGINNIS, LLP


By: ___/s/ Beth M. Margolis_____
      Beth M. Margolis (pro hac vice)

817 Broadway, 6th Floor
New York, New York 10003
(212) 228-7727

Scott J. Tucker (BBO # 503940)
TUCKER, HEIFETZ & SALTZMAN, LLP
100 Franklin Street, Suite 801
Boston, MA 02110
(617) 557-9696

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system on April 9, 2008 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including the attorney of record for defendant Entergy Nuclear Operations, Inc.


                                        /s/  Ben Breen
                                        Ben Breen

21